UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                                              :
SESAME WORKSHOP,                                              :
                                                              :      Case No. _____
                                    Plaintiff,                :
                                                              :      **JURY TRIAL DEMANDED**
                    - against -                               :
                                                              :
STX PRODUCTIONS, LLC, STX FINANCING,                         :
LLC, and STX FILMWORKS, INC.,                                :
                                                              :
                                    Defendants.               :
-------------------------------------------------------------- x

## COMPLAINT

        Plaintiff Sesame Workshop ("Sesame"), as its complaint against defendants STX

Productions, LLC, STX Financing, LLC, and STX Filmworks, Inc. (collectively, "STX" or

"Defendants"), by its undersigned counsel, alleges as follows, based upon knowledge as to its

own acts and upon information and belief as to all others:

## INTRODUCTION

        1.      Sesame seeks to enjoin Defendants' deliberate effort to appropriate its

SESAME STREET mark, and its trusted brand and goodwill, to promote their R-rated movie,

*The Happytime Murders*, by way of a violent and sexually-explicit trailer.  SESAME STREET is

a registered trademark of Sesame, an organization with a long and storied history of "helping

kids grow smarter, stronger and kinder."  Defendants' widely-distributed marketing campaign

features a just-released trailer with explicit, profane, drug-using, misogynistic, violent,

copulating, and even ejaculating puppets,[1] along with the tagline "NO SESAME. ALL

---

[1] *See* https://youtu.be/-eks8LG72uo.

STREET." Defendants do not own, control or have any right to use the SESAME STREET mark. Instead, they are distributing a trailer that deliberately confuses consumers into mistakenly believing that Sesame is associated with, has allowed, or has even endorsed or produced the movie and tarnishes Sesame's brand. Defendants headline their marketing materials with a tagline that invokes the well-known SESAME STREET mark and references the award-winning children's preschool program.

2. The threat of irreparable injury posed to Sesame's mark and brand cannot be overstated. Sesame has worked for nearly 50 years to build, cultivate and maintain trust with its audience of parents and young children built on its reputation for wholesome educational programming. That trust, although built over a span of generations, is too easily lost and is now in jeopardy. Defendants threaten to inflict serious, irreparable damage to Sesame's mark and brand by associating their adult movie with *Sesame Street*. As evidenced by a parade of social media posts, emails and public comments, the "NO SESAME. ALL STREET." tagline has confused and appalled viewers because of what they believe to be a serious breach of trust by Sesame by supporting this movie. Defendant's actions have diluted and defiled Sesame's beloved *Sesame Street* children's television show and SESAME STREET mark by associating their trailer with *Sesame Street*. Indeed, it appears that Defendants chose their "NO SESAME. ALL STREET." tagline with the hope and intention of commercially appropriating Sesame's mark and associated goodwill and implying an association that does not exist to promote the release of their movie.

3. Sesame takes no issue with Defendants' right to make their movie, and to market it – lawfully – however they see fit. But Defendants cannot impermissibly appropriate and trade on Sesame's mark, brand, and goodwill to market a movie that has no nexus to *Sesame*

*Street*.  Defendants seem intent on seeding confusion in the mind of the public as to the association between the movie, *Sesame Street*, and its beloved Muppets from Sesame Street, given the role of The Jim Henson Company (a division of which, along with Defendants, is a producer of *The Happytime Murders*) in originally creating the Muppets.  Defendants' use and appropriation of the SESAME STREET mark and brand infringes upon Sesame's federal, state, and common law intellectual property rights; and is causing devastating, irreparable harm to its brand and image.  Sesame has demanded that Defendants simply drop the references to SESAME STREET from *The Happytime Murders* marketing materials – a relatively small burden compared to the devastating and irreparable injury Defendants are causing.  But Defendants have refused, and the confusion and tarnishment are building, as evidenced in numerous social media postings.

4.     Sesame seeks an injunction that forces Defendants to cease and desist their trading upon the goodwill associated with SESAME STREET in furtherance of box office receipts.  The promotion of *The Happytime Murders* should succeed or fail on its own merits, not on a cynical, unlawful attempt to deceive and confuse the public into associating it with the most celebrated children's program in history.

## **PARTIES**

5.     Plaintiff Sesame Workshop is a not-for-profit organization incorporated under the New York State Education Law with its principal place of business in New York.

6.     Upon information and belief, defendant STX Productions, LLC is organized under the laws of the State of Delaware, with its principal office in California.

7.     Upon information and belief, defendant STX Financing, LLC is organized under the laws of the State of Delaware, with its principal office in California.

3354927.2

8.      Upon information and belief, defendant STX Filmworks, Inc. is incorporated under the laws of the State of Delaware, with its principal office in California.

9.      Each of STX Productions, LLC, STX Financing, LLC, and STX Filmworks, Inc. regularly conducts business in New York, including by promoting, marketing, and advertising, films here, both in print, through trailers played at movie theaters in New York, and by directing online and social media promotional materials to viewers in New York.  STX is currently promoting, marketing, and advertising *The Happytime Murders* in New York.  STX also distributes major motion pictures that are screening in movie theaters in New York, including, at this time, *I Feel Pretty* and *Gringo*, and recently *Molly's Game*, *Den of Thieves*, *The Foreigner*, *A Bad Moms Christmas*, and more.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over the federal claims for trademark infringement, false designation of origin, false advertising, dilution, and related wrongs under 28 U.S.C. §§ 1331, 1338(a).  This Court has subject matter jurisdiction over the state claims under 28 U.S.C. § 1367(a).

11.      This Court has personal jurisdiction over the Defendants under New York's long arm statute, N.Y. C.P.L.R. 302(a)(1)-(2) because they have specifically targeted their products and services to consumers in New York and committed a tortious act within the state.  The trailer is being shown in advance of recently-released *Deadpool 2* in theaters throughout New York.  In addition, the trailer is being marketed through social media – Twitter, Facebook, and others – with the clear intention of reaching users in the highly-populated New York City area.

12.      Venue is proper in this District under 28 U.S.C. § 1391(b) & (c).

4

**FACTUAL ALLEGATIONS**

**Sesame and *Sesame Street***

13.     Sesame is a nonprofit educational organization chartered by the New York State Education Department.  It is the creator of the beloved children's television program *Sesame Street*, which stars a cast of Muppets and people co-existing on the fictional eponymous Sesame Street.  *Sesame Street*'s famous "Muppet" characters, including Elmo, Big Bird, Cookie Monster, Bert & Ernie, Oscar the Grouch, Grover and The Count are recognized throughout the U.S. and around the world.[2]

14.     *Sesame Street* was created in 1969 to give all children access to early education.  It was a revolutionary idea:  to use television as a medium to reach kids at scale with important lessons ranging from academic basics to life skills, like kindness and inclusion.  At the time, television was widely criticized for being too violent and for reflecting commercial values, or in the words of then-F.C.C. chairman Newton Minow, "a vast wasteland."  *Sesame Street* changed all that by creating a show that was not just engaging, but wholesome, educational, and with kids' best interests at its core.

15.     Today, *Sesame Street* has grown into a global educational phenomenon and force for good, including social impact initiatives that go well beyond the show and bring education to kids in need.  Sesame content currently reaches over 190 million children around the world, making a meaningful and lasting difference in their lives.  Studies show that American children who frequently viewed *Sesame Street* as preschoolers achieved high school grade point

---

[2] The late Jim Henson created the Muppets and copyrighted and trademarked them.  Henson's company, Muppets, Inc. (now The Jim Henson Company, Ltd. ("Henson")), licensed to Sesame the right to use the Muppets of *Sesame Street*.  In 2001, Henson conveyed to Sesame the copyright ownership for the Muppets of *Sesame Street*, and a grant of rights to use the Muppet mark in connection with *Sesame Street*.

averages that were almost 16% higher than those who did not.  And a 2013 study by a leading academic institution concluded that children who watched one of the international versions of *Sesame Street* gained on average almost 12 percentile points on learning outcomes, compared to those who did not.

   16. *Sesame Street* enjoys extraordinary brand awareness and approval among U.S. audiences (including 100% brand recognition among parents with children ages 0-5) and is considered the gold standard in children's media.  *Sesame Street* has been ranked among the top 25 children's programs among kids 2-5 for 45 years.  A third party commissioned by Sesame found that 2/3 of today's preschool moms watched *Sesame Street* as children and 2/3 of Baby Boomers and 3/4 of Generation X and Millennials like or love *Sesame Street*.  Elmo, one of *Sesame Street*'s Muppets, has maintained 50% or greater awareness among preschoolers over the past 10 years (based on estimates by parents with children between the ages of 2 and 5).  *Sesame Street* has a huge global following that interacts with the show by watching the program on television, playing *Sesame Street* digital games on the *Sesame Street* website or app, listening to *Sesame Street* podcasts, or by watching clips from episodes on Sesame's YouTube channel. Sesame has an active social media presence featuring its SESAME STREET and SESAME variant marks, including on Facebook and Twitter.[3]  Every quarter in the U.S., more than 15

---

[3] In total, *Sesame Street* and its characters have approximately 19.8 million "Likes" or "Followers" on Facebook, Twitter, and Instagram.  For example, the SESAME STREET official Facebook page, which launched in 2009, currently has approximately 1.1 million "Likes" around the world, with approximately 600,000 originating in the U.S.  There are separate Facebook pages for the show's famous Muppet characters – which pages also prominently feature the SESAME STREET and SESAME variant marks – which have huge followings.  For instance, Facebook – COOKIE MONSTER currently has almost 9 million "Likes" worldwide with approximately 3.2 million in the U.S., and Facebook – ELMO has almost 6 million "Likes" worldwide, with approximately 1.3 million in the U.S.  In addition, *Sesame Street* has over 3.6 million YouTube subscribers worldwide.

million people watch *Sesame Street* on PBS and HBO, and more than 12 million kids aged 0-8

interact with *Sesame Street* on various platforms.

17.     *Sesame Street's* reputation and trust are critical to its success.  Educators,

parents, corporate partners, and funders all count on *Sesame Street* to be a safe haven for kids

and uphold the moral values that the show teaches.  Studies show that moms rate *Sesame Street*

#1 as a brand they trust, that is safe for their child to watch, has high standards, and has their

kids' best interest at heart.

18.     With 188 Emmy Awards, *Sesame Street* is the most awarded television

show in history.  Sesame content has also been recognized in a variety of philanthropic

capacities, most recently as the recipient of the Smithsonian's American Ingenuity Award, the

CLIO Global Impact Award, and the MacArthur Foundation's first ever 100&Change Award.  In

connection with the 100&Change Award, the MacArthur Foundation awarded Sesame a $100

million grant to address the refugee crisis in Iraq, Syria, Jordan and Lebanon by educating young

children displaced by conflict and persecution in the Middle East.  As a nonprofit, Sesame

continues to prove itself not only as a model in educational media, but also as a trailblazer in

philanthropic impact, working every day to ensure kids everywhere grow up smarter, stronger,

and kinder.

19.     Sesame provides numerous educational and entertainment-focused

services and products using the SESAME STREET mark and other SESAME-formative marks.[4]

---

[4] These include, but are not limited to, charitable services; education and entertainment-related
services; streaming of audio and video materials online; activities and games provided online;
educational and entertainment content; theatrical productions; amusement parks; computer
hardware, software, and peripherals; electronic devices and accessories; printed publications and
materials; paper goods, stationery, arts and crafts materials, and office supplies; toys and games;
clothing; personal care products; houseware; baby products; jewelry and accessories; bags;
furniture, home furnishings, bedding and linens; food and beverage items; and more.  (Sesame

Sesame first registered the word mark SESAME STREET with the United States Patent Office on November 27, 1973, Registration No. 974,206, for use in International Class 41 – educational services rendered through the medium of television, namely, a children's program.  The SESAME STREET mark registration has been renewed through November 2023.

### *The Happytime Murders* Marketing Campaign and Resulting Confusion and Tarnishment of Sesame's Mark

20.     Defendants are the U.S. distributor and a producer (along with Henson) of *The Happytime Murders*, scheduled for release in the United States on August 17, 2018. Defendants have initiated a marketing campaign that seeks to capitalize on the reputation and goodwill of *Sesame Street* to market their movie.  The movie's Facebook page states:  "NO SESAME. ALL STREET.  Two clashing detectives, one human (Melissa McCarthy) and one puppet, are forced to work together to solve the brutal murders of the former cast of a beloved classic puppet television show."  (Orsini Decl. ¶ 4.)   The use of the tagline, "NO SESAME. ALL STREET." is prominent in Defendants' social media marketing campaign.  In the profile section of the Twitter account for *The Happytime Murders*, Defendants display it at the very top of the profile picture, and then repeat the phrase below the picture:

---

has 9 live trademark registrations of SESAME STREET and an additional 4 live trademark registrations that include the words SESAME STREET.



21.     Defendants also use this tagline to emphasize a non-existent association with *Sesame Street* in the movie's trailer (*see* https://youtu.be/-eks8LG72uo), which was widely released last week.  In addition to being available online, the trailer is running before screenings of *Deadpool 2* (including in New York).  *Deadpool 2* led all box office receipts over the weekend of May 18-20 with $125 million in gross receipts.

22.     The trailer is "Restricted" – meaning that the Motion Picture Association of America has not deemed it suitable for all audiences.  And it is easy to see why:  scenes from the movie shown in the trailer depict repeated foul language by humans and puppets; drug use by humans and puppets; puppet prostitutes offering sexual favors to a human; gun and other types of violence; and puppet sex that culminates in scene where a puppet is depicted copiously ejaculating for an extended period.  The leading online movie ticket-seller, Fandango, referred to it as "filthy" and "depraved", and repeated the "NO SESAME. ALL STREET." tagline, in a tweet that Defendants retweeted:



23.     While the trailer at issue is almost indescribably crude, Sesame is not trying to enjoin Defendants' promotion or distribution of their movie.  It is only Defendants' deliberate choice to invoke and commercially misappropriate Sesame's name and goodwill in marketing the movie – and thereby cause consumers to conclude that Sesame is somehow associated with the movie – that has infringed on and tarnished the SESAME STREET mark and goodwill.

24.     Already, Defendants' strategy appears to be working.  In just the few days since the trailer was released and covered in the media, instances of confusion and tarnishment are everywhere.  As one reviewer wrote, *The Happytime Murders* includes "Prostitution, drug use, murder, and more, all from the makers of *Sesame Street* and The Muppets.  Ladies and

3354927.2

gentleman, hold on to your childhoods, this is *The Happytime Murders*."[5]  Those posting on

social media have followed suit, demonstrating their clear confusion as to the connection

between the movie and *Sesame Street*, and the resulting tarnishment of Sesame's reputation:







---

[5] This article was later updated after Sesame brought it to the reviewer's attention, to read "… all from the DNA of *Sesame Street* and *The Muppets*."

3354927.2



I thought about Alayna when I saw this 😄 I hope she never sees this movie! It's will traumatize Sesame Street forever

Like · Reply · 3d · Edited                    😆 1



never seen these sesame characters

Like · Reply · 2d



i think mydreams justt came true. Adult sesame street

Like · Reply · 3d                    👍 1



Follow

The happytime murderers made me question sesame street and the muppets

ALL RUINED NA 😂😂😂😂😂😂

1:03 AM - 19 May 2018

3354927.2





25.     A comment about *The Happytime Murders* was posted on the *Sesame Street* Facebook page indicating the poster's confusion about Sesame's ability to control whether the movie is ever released:  "Now, PLEASE, Sesame Street, find a way to ensure that the wretched, raunchy, inappropriate movie coming out with Melissa McCarthy and Muppets in Rated X situations NEVER makes it in theatres. It should be illegal."

26.     As Defendants intended, the audience for their marketing campaign is reading the "NO SESAME. ALL STREET." tagline as an indication that the movie will show the more salacious – or, colloquially, "street" – side of characters associated with (even if not starring on) *Sesame Street*.  This deliberate invocation of, and implied association with, *Sesame Street* at the least confuses viewers into thinking that Sesame itself was involved with, and/or has endorsed or allowed, this subversion of its own programming – thereby irreparably harming Sesame and its goodwill and brand.

**Defendants Belatedly Inform Sesame About Their Marketing Campaign, But Refuse to Stop Using Their "NO SESAME. ALL STREET." Tagline**

27.     Late in the night on May 17, 2018, Henson alerted Sesame to the existence of the raunchy trailer for *The Happytime Murders*, and its release on May 18 with *Deadpool 2*. After receiving Henson's communication in the morning on May 18, Sesame discovered Defendants' use of the "NO SESAME. ALL STREET." tagline on *The Happytime Murders* Facebook page.

28.     On May 18 at 5:53 p.m. EST, Sesame's in-house counsel sent an email to in-house counsel for each of Defendants and Henson, attaching a letter from Sesame's General Counsel, Joseph Salvo.  The letter demanded that Defendants immediately cease and desist from any and all further use of Sesame's rights associated with SESAME STREET in marketing *The Happytime Murders*.  The letter demanded that Defendants, *inter alia*, remove the trailer from anywhere it appears, including YouTube, Facebook, and any other website; assure Sesame that the trailer has not been displayed elsewhere; and respond by 5:00 p.m. EST on Sunday, May 19, 2018, confirming their compliance with those demands.

29.     After Sesame emailed the cease-and-desist letter to Defendants and Henson, Sesame's in-house counsel called each recipient to confirm receipt, and emphasized the seriousness of the issue and Sesame's expectation that it would receive a response over the weekend.  Later that evening, outside counsel for Defendants emailed Sesame and Henson, saying that it would evaluate Sesame's cease-and-desist letter, and aim to respond by Monday, May 21.  Sesame's General Counsel responded the next afternoon that "time is of the essence" because there are already visible instances of actual confusion in the marketplace caused by Defendants' marketing campaign and asked for a response by midday EST on Monday, May 21.

30.     At 4:22 p.m. EST on Sunday, May 20, 2018, Lisa Henson, CEO and

President of Henson, and an executive producer of the movie, sent an email to Sesame's CEO,

Jeffrey Dunn, stating:

> It makes me terribly sad that the marketing campaign for
> HAPPYTIME MURDERS has devolved to this state of affairs ….
> It's been very difficult for Brian [Henson] (and also for Nicole
> [Goldman]) to effect what STX is doing with the campaign. *We
> wholeheartedly disagree with their direction of referencing
> Muppets and Sesame*, and Brian has taken as hard a position as he
> could, but contractually we don't have the right to change it.  For
> myself personally, I did not know that the "No Sesame" line was
> going to be in the final trailer, and I apologize for not giving you a
> heads up at the CPA event (emphasis added).

31.     Ms. Henson further explained that:

> Throughout the development of HAPPYTIME MURDERS, Brian
> has conscientiously pushed the creative direction and design of the
> new characters away from Muppets (both Muppet Show and
> Sesame Street) because **he never saw it as a parody of the
> Muppets**.  *Unlike MEET THE FEEBLES and AVENUE Q, which
> were explicit parodies of those shows,* **the HAPPYTIME concept
> is an original world** where all kinds of puppets live alongside
> humans as an underclass in society ala ROGER RABBIT.  We
> resisted creative suggestions to make some characters look more
> like Anything Muppets or Muppet monsters, because that was
> exactly wrong for the movie.  Therefore, **trading off the famous
> Muppets to sell the film is exactly what we did not want to have
> happen** (emphases added).

32.     Despite Henson's acknowledgement that *The Happytime Murders* was not

a parody, and should not be trading off the famous Muppets, Defendants have refused to change

their marketing campaign.  At 4:17 p.m. EST on Monday, May 21, Defendants' outside counsel

sent Sesame a letter declining to change their marketing campaign for *The Happytime Murders*.

33.     As a result of Defendants' refusal to remove references to the SESAME

STREET mark, Sesame will face irreparable harm to the brand and goodwill associated with this

mark.

3354927.2

## FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement
### (15 U.S.C. § 1114)

34.     Sesame repeats and re-alleges the allegations set forth in paragraphs 1 through 33 as if fully set forth herein.

35.     Sesame owns the SESAME STREET mark, which is valid and registered with the US Patent and Trademark Office in Class 41, registration number 974206.

36.     Defendants have both actual and constructive knowledge of the registered SESAME STREET mark.

37.     Defendants have used, are using, and have caused others to use the registered SESAME STREET mark, and marks confusingly similar thereto, in connection with the advertising, promotion, and marketing of the movie *The Happytime Murders* without Sesame's authorization.

38.     These uses of the registered SESAME STREET mark have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, Sesame, in violation of 15 U.S.C. § 1114.

39.     Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith, and done with the intent to trade on the goodwill and reputation of Sesame and the SESAME STREET mark, and to deceive consumers into believing that Sesame was involved in the creation, promotion, and/or distribution of the movie *The Happytime Murders*, or that *The Happytime Murders* is endorsed by, sponsored by, or otherwise associated or affiliated with Sesame.

40.     Defendants' unlawful conduct has caused Sesame to lose control over the goodwill it has established in the SESAME STREET mark and to irreparably injure and damage Sesame's business, reputation, and goodwill.  Unless Defendants are enjoined from their

unlawful conduct, Sesame will continue to suffer irreparable harm for which it has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### Federal Trademark Infringement, Unfair Competition, And False Designation Of Origin
### (15 U.S.C. § 1125)

41.    Sesame repeats and re-alleges the allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

42.    Sesame owns the SESAME STREET mark, which is valid and registered with the US Patent and Trademark Office in Class 41, registration number 974206.

43.    Defendants have used, are using, and have caused others to use the registered SESAME STREET mark in connection with the advertising, promotion, and marketing of the movie *The Happytime Murders* without Sesame's authorization.

44.    These uses of the registered SESAME STREET mark have caused and are likely to cause confusion, mistake, and deception as to the actual or implied affiliation, connection, or association with, or sponsorship or approval by, Sesame, in violation of 15 U.S.C. § 1125.

45.    Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith, and done with the intent to trade on the goodwill and reputation of Sesame and the registered SESAME STREET mark, and to deceive consumers into believing that Sesame was involved in the creation, promotion, and/or distribution of the movie *The Happytime Murders*, or that *The Happytime Murders* is endorsed by, sponsored by, or otherwise associated or affiliated with Sesame.

46.    Defendants' unlawful conduct has caused Sesame to lose control over the goodwill it has established in the registered SESAME STREET mark, and has irreparably injured

3354927.2

and damaged Sesame's business, reputation, and goodwill.  Unless Defendants are enjoined from

their unlawful conduct, Sesame will continue to suffer irreparable harm for which it has no

adequate remedy at law

### THIRD CLAIM FOR RELIEF
### Federal False Advertising
### (15 U.S.C. § 1125)

47.    Sesame repeats and re-alleges the allegations set forth in paragraphs 1

through 46 as if fully set forth herein.

48.    Sesame owns the SESAME STREET mark, which is valid and registered

with the US Patent and Trademark Office in Class 41, registration number 974206.

49.    Defendants are distributing, have distributed, and caused others to

distribute materials that misrepresent that Defendants' uses of the registered SESAME STREET

mark are authorized, licensed, or sponsored by Sesame when in fact they are not.

50.    Defendants' false or misleading statements misrepresent the nature,

characteristics, and qualities of Defendants' goods, services, or commercial activities, and have

deceived and are likely to deceive the public and the trade in violation of 15 U.S.C. § 1125.

51.    Defendants' unlawful conduct was and is knowing, willful, deliberate, and

in bad faith because Defendants knew at the time the statements were made that they were false

or misleading statements and made the statements in order to increase the sales of tickets to see

the movie *The Happytime Murders*, and the revenues therefrom.

52.    Unless Defendants are permanently enjoined from their unlawful conduct,

Sesame will continue to suffer damages as well as irreparable injury for which it has no adequate

remedy at law.

3354927.2

## FOURTH CLAIM FOR RELIEF
### Federal Trademark Dilution
### (15 U.S.C. § 1125(c))

53.    Sesame repeats and re-alleges the allegations set forth in paragraphs 1 through 52 as if fully set forth herein.

54.    Sesame owns the SESAME STREET mark, which is valid and registered with the US Patent and Trademark Office in Class 41, registration number 974206.

55.    The registered SESAME STREET mark is widely recognized by the general consuming public and is famous and became famous before Defendants commenced their unlawful uses of the registered SESAME STREET mark.

56.    Defendants have used, are using, and have caused others to use the registered SESAME STREET mark, and substantially similar marks, in commerce in connection with the advertising, promotion, and marketing of the movie *The Happytime Murders*, without Sesame's authorization.

57.    Defendants' uses of the registered SESAME STREET mark, and substantially similar marks, are likely to impair and damage the distinctiveness of the registered SESAME STREET mark by tarnishing the reputation of Sesame and the goodwill it has developed in the SESAME STREET mark, and by causing the public to no longer associate the registered SESAME STREET mark exclusively with Sesame.

58.    Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith, and done with the intent to trade on the goodwill and reputation of Sesame and the registered SESAME STREET mark, and to deceive consumers into believing that Sesame was involved in the creation, promotion, and/or distribution of the movie *The Happytime Murders*, or that *The Happytime Murders* is endorsed by, sponsored by, or otherwise associated or affiliated with Sesame.

59.     Unless Defendants are permanently enjoined from their wrongful conduct, Sesame will continue to suffer damages, as well as irreparable injury for which it has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
**Trademark Infringement, Unfair Competition,
And False Designation Of Origin
(New York Law)**

60.     Sesame repeats and re-alleges the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61.     Sesame owns common law rights in its trademarks (the "Common Law Marks") through the extensive and continuous use of those marks in New York and other States in the United States.

62.     Defendants have had both actual and constructive knowledge of Sesame's superior rights in the Common Law Marks.

63.     Defendants have used, are using, and have caused others to use the Common Law Marks in connection with the advertising, promotion, and marketing of the movie *The Happytime Murders*, without Sesame's authorization.

64.     Through Defendants' unauthorized use, Defendants unfairly appropriated or exploited the special qualities associated with the Common Law Marks, resulting in the misappropriation of a commercial advantage belonging to Sesame.

65.     Defendants' unauthorized use of the Common Law Marks has caused and is likely to cause confusion, mistake, and deception as to their affiliation, connection, or association with, or sponsorship or approval by, Sesame, in violation of New York law.

66.     Defendants' unauthorized use of the Common Law Marks has caused and is likely to cause confusion, mistake, and deception as to whether Sesame was involved in the

20

creation, promotion, and/or distribution of the movie *The Happytime Murders*, or that *The Happytime Murders* is endorsed by, sponsored by, or otherwise associated or affiliated with Sesame, in violation of New York law.

67.     Unless Defendants are permanently enjoined from their wrongful conduct, Sesame will continue to suffer damages as well as irreparable injury for which it has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### False Advertising And Unfair Competition
### (New York Law)

68.     Sesame repeats and re-alleges the allegations set forth in paragraphs 1 through 67 as if fully set forth herein.

69.     Defendants are distributing, have distributed, and have caused others to distribute materials that misrepresent that Defendants' uses of the Common Law Marks are authorized, licensed, or sponsored by Sesame when in fact they are not.

70.     Defendants' false or misleading statements misrepresent the nature, characteristics, and qualities of Defendants' goods, services, or commercial activities and have deceived and are likely to deceive the public and the trade in violation of New York law.

71.     Defendants' unlawful conduct was and is knowing, willful, deliberate, and in bad faith because Defendants knew at the time the statements were made that they were false or misleading statements and made the statements in order to increase the sales of tickets to see the movie *The Happytime Murders*, and the revenues therefrom.

72.     Unless Defendants are permanently enjoined from their unlawful conduct, Sesame will continue to suffer damages as well as irreparable injury for which it has no adequate remedy at law.

3354927.2

**SEVENTH CLAIM FOR RELIEF**
**Trademark Dilution**
**(N.Y. Gen. Bus. Law § 360-l)**

73.     Sesame repeats and re-alleges the allegations set forth in paragraphs 1 through 72 as if fully set forth herein.

74.     Sesame owns the SESAME STREET mark.

75.     Defendants have used, are using, and have caused others to use the SESAME STREET mark without Sesame's authorization.

76.     Defendants' unauthorized uses of the SESAME STREET mark have impaired and damaged and are likely to impair and damage the distinctiveness of the SESAME STREET mark by causing the public to no longer associate the SESAME STREET mark exclusively with Sesame.  Defendants' uses are also likely to tarnish the reputation of Sesame and the goodwill it has developed in the SESAME STREET mark.

77.     Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Sesame and the SESAME STREET mark, to impair the distinctiveness of the SESAME STREET mark, and to deceive consumers into believing that Sesame is connected with Defendants' products and services.

78.     Unless Defendants are permanently enjoined from their wrongful conduct, Sesame will continue to suffer damages as well as irreparable injury for which it has no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(New York Law)**

79.     Sesame repeats and re-alleges the allegations set forth in paragraphs 1 through 78 as if fully set forth herein.

80.     Defendants have used, are using, and have caused others to use the SESAME STREET mark without Sesame's authorization

81.     As a result of Defendants' unlawful misappropriation of the SESAME STREET mark, Defendants have reaped substantial benefits at the expense of Sesame that it would be unjust for Defendants to retain.

82.     By reason of the foregoing, Sesame is entitled to a judgment against Defendants awarding Sesame restitution in an amount to be determined at the trial of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Sesame Workshop prays that judgment be awarded in its favor and against STX as follows:

(a)　　That this Court enter judgment in favor of Sesame Workshop and against Defendants, jointly and severally, on all counts alleged herein;

(b)　　That this Court issue a permanent injunction that

(i)　　Enjoins Defendants from using Sesame's protected trademarks and intellectual property, including Defendant's use of the phrase "NO SESAME. ALL STREET." in connection with their marketing of the film *The Happytime Murders*, and enjoins Defendants' employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action, from enabling or assisting Defendants in such uses;

(ii)　　Requires Defendants, their employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action to engage in corrective advertising in a form pre-approved by Sesame and the Court to dispel the confusion caused by Defendants' unlawful conduct; and

(iii)　　Requires Defendants to file with the Court and serve on Sesame, within thirty (30) days after entry of such an injunction, a report in writing under oath setting forth in detail the manner in which Defendants have complied with such an injunction;

(c)　　That this Court grant monetary relief in the form of:

(i)　　Compensatory damages and Defendants' profits under 15 U.S.C. § 1117 and New York law for all injuries to Sesame caused by Defendants' acts alleged herein;

(ii)　　An accounting of Defendants' profits derived by Defendants' acts alleged herein under 15 U.S.C. § 1117 and New York law and said accounting trebled;

(iii)　　Punitive damages under New York law;

(iv)　　Enhanced or treble damages under 15 U.S.C. § 1117 and New York law;

24

3354927.2

(v)      Attorneys' fees and costs under 15 U.S.C. § 1117 and New York law;

(vi)     Restitution, in an amount to be determined at trial;

(vii)    Prejudgment and post-judgment interest;

(d)     That this Court permit the service of the Complaint, associated motion papers, and any Court order upon Defendants and their legal representatives by email and FedEx pursuant to Federal Rule of Civil Procedure 4(f)(3); and

(e)     That this Court grant such other and further relief as it deems just and proper.

## JURY TRIAL DEMAND

Sesame respectfully demands a jury trial on all claims and issues so triable.

Dated:  New York, New York
       May 24, 2018

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

Andrew W. Goldwater (agoldwater@fklaw.com)
Mary E. Mulligan (mmulligan@fklaw.com)
John N. Orsini (jorsini@fklaw.com)
David J. Ranzenhofer (dranzenhofer@fklaw.com)
7 Times Square
New York, NY 10036-6516
(212) 833-1100

*Attorneys for Plaintiff Sesame Workshop*

3354927.2