UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                                            :

SESAME WORKSHOP,                       :

                                                            :     18-cv-04597 (VSB)
                          Plaintiff,     :

                                                            :

     - against -                                       :

                                                            :

STX PRODUCTIONS, LLC, STX FINANCING,   :
LLC, and STX FILMWORKS, INC.,

                                                            :

                         Defendants.   :
                                                           :
------------------------------------------------------------------ x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S APPLICATION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**


                                                       FRIEDMAN KAPLAN SEILER &
                                                         ADELMAN LLP
                                                       7 Times Square
                                                       New York, NY 10036-6516
                                                       (212) 833-1100

May 29, 2018                                   *Attorneys for Plaintiff Sesame Workshop*

3356132.1

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... iii

I. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ...................1

    A. Defendants' Acts Easily Satisfy the Requirements of New York's Long-Arm Statute ...................................................................................................1

    B. Personal Jurisdiction Over Defendants Comports with Constitutional Due Process .........................................................................................................3

        1. Defendants Have the Requisite Minimum Contacts with New York ..........3

        2. Defendants Cannot Show That Jurisdiction Would Be Unreasonable .............................................................................................4

II. SESAME IS LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIMS ....................4

    A. Happytime's Tagline Is Not a Disclaimer ................................................................4

    B. Defendants' Argument that They Are Not Using The Tagline as a Mark Is Meritless ....................................................................................................6

    C. Defendants' Conclusory Fair Use Defense Lacks Merit ........................................6

        1. Classic Fair Use. .............................................................................................6

        2. Nominative Fair Use ......................................................................................7

    D. Sesame Is Likely to Show a Likelihood of Confusion ...........................................8

        1. The Similarity of the Marks Factor Favors Sesame......................................8

        2. The Proximity of the Products Factor Favors Sesame .................................9

        3. Sesame Has Shown Significant Evidence of Actual Confusion ................10

        4. The Bad Faith Factor Favors Sesame .........................................................10

        5. The Quality of the Products Favor Favors Sesame....................................11

        6. The Consumer Sophistication Factor Favors Sesame................................11

III. SESAME HAS SHOWN IRREPARABLE HARM AND THAT THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN ITS FAVOR........................11

IV.    ANY BOND REQUIRED SHOULD BE DE MINIMIS ................................................... 12

CONCLUSION ................................................................................................................................ 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
   No. 18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ....................................2

*Am. ORT, Inc. v. ORT Israel*,
   No. 07 Civ. 2332 (RJS), 2009 WL 233950 (S.D.N.Y. Jan. 22, 2009)....................................12

*Bensusan Rest. Corp. v. King*,
   126 F.3d 25 (2d Cir. 1997)......................................................................................................3

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)....................................................................................................1

*Blakeman v. The Walt Disney Co.*,
   613 F. Supp. 2d 288 (E.D.N.Y. 2009) .................................................................................2, 3

*Bowman v. Winger*,
   No. 14 Civ. 3428 (AT), 2015 WL 1639255 (S.D.N.Y. Mar. 25, 2015) ..................................1

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)................................................................................................................4

*Cartier, a Div. of Richemont N. Am., Inc. v. Oakley, Inc.*,
   No. 06 Civ. 5841 (LAP), 2006 WL 3635321 (S.D.N.Y. Dec. 11, 2006) ................................2

*Chloé v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010)....................................................................................................4

*Columbus Rose Ltd. v. New Millennium Press*,
   No. 02 Civ. 2634 (JGK), 2002 WL 1033560 (S.D.N.Y. May 20, 2002)................................11

*Coty Inc. v. Excell Brands, LLC*,
   277 F. Supp. 3d 425 (S.D.N.Y. 2017).....................................................................................8

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)................................................................................................................1

*Deere & Co. v. MTD Prods., Inc.*,
   41 F.3d 39 (2d Cir. 1994) .......................................................................................................8

*Eades v. Kennedy, PC Law Offices*,
   799 F.3d 161 (2d Cir. 2015)............................................................................................1, 2, 3

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
 228 F.3d 56 (2d Cir. 2000)..................................................................................................7

*German Educ. Television Network, Ltd. v. Or. Pub. Broad. Co.*,
 569 F. Supp. 1529 (S.D.N.Y. 1983)....................................................................................2

*Harley Davidson, Inc. v. Grottanelli*,
 164 F.3d 806 (2d Cir. 1999)............................................................................................4, 5

*Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*,
 832 F.2d 1311 (2d Cir. 1987)..........................................................................................4, 5

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
 823 F.3d 153 (2d Cir. 2016)............................................................................................7, 8

*Keeton v. Hustler Magazine, Inc.*,
 465 U.S. 770 (1984)............................................................................................................4

*Kelly-Brown v. Winfrey*,
 717 F.3d 295 (2d Cir. 2013)............................................................................................6, 7

*Lambda Elecs. Corp. v. Lambda Tech., Inc.*,
 515 F. Supp. 915 (S.D.N.Y. 1981)....................................................................................10

*Licci v. Lebanese Canadian Bank, SAL*,
 732 F.3d 161 (2d Cir. 2013)................................................................................................4

*M. Shanken Commc'ns, Inc. v. Variant Events, LLC*,
 No. 10 Civ. 4747 (CM), 2010 WL 4159476 (S.D.N.Y. Oct. 7, 2010) ................................2

*Marie v. Altshuler*,
 30 A.D.3d 271 (1st Dep't 2006) .........................................................................................3

*Merck & Co. v. Mediplan Health Consulting, Inc.*,
 425 F. Supp. 2d 402 (S.D.N.Y. 2006)............................................................................7, 8

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
 818 F.2d 254 (2d Cir. 1987)..............................................................................................11

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
 704 F. Supp. 2d 305 (S.D.N.Y. 2010).............................................................................9, 10

*Norex Petroleum Ltd. v. Blavatnik*,
 22 N.Y.S.3d 138, 48 Misc.3d 1226(A), (N.Y. Sup. Ct. 2015)............................................1

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic &
 Sports Physical Therapy P.C.*,
 314 F.3d 62 (2d Cir. 2002).................................................................................................4

*Roux Labs., Inc. v. Clairol Inc.*,
   427 F.2d 823 (C.C.P.A. 1970) .................................................................................................6

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
   800 F. Supp. 2d 515 (S.D.N.Y. 2011) ................................................................................9, 11

*Virgin Enters. Ltd. v. Nawab*,
   335 F.3d 141 (2d Cir. 2003) .....................................................................................................9

*Walden v. Fiore*,
   571 U.S. 277, 134 S. Ct. 1115 (2014) ..................................................................................1, 3

**Statutes and Rules**

N.Y. C.P.L.R. § 302(a)(1) ................................................................................................................1

N.Y. C.P.L.R. § 302(a)(2) ................................................................................................................2

N.Y. C.P.L.R. § 302(a)(3) ................................................................................................................2

# I.
# THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS[1]

Defendants' argument that this Court lacks specific personal jurisdiction conflates the various statutory and Constitutional requirements, and is altogether specious.[2]

**A.      Defendants' Acts Easily Satisfy the Requirements of New York's Long-Arm Statute**

To determine personal jurisdiction over a non-domiciliary, the court must first apply the forum state's long-arm statute.  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015); *see also Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1121 (2014).  Under N.Y. C.P.L.R. § 302(a)(1), "'(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity.'"  *Eades*, 799 F.3d at 168 (quoting *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)).

Both § 302(a)(1) requirements are easily met.  *First*, Defendants distributed *The Happytime Murders* ("*Happytime*") trailer to **270 movie theaters in New York** (Springer Decl. ¶ 8); they negotiated with each theater chain to show the trailer and purchase "trailer inventory" from them (*id*. ¶¶ 4, 6); they engaged third parties to check whether theaters showed the trailer as agreed (*id*. ¶ 5); and they shipped 9,500 posters to 3,000 locations (*id*. ¶ 9), including New York.[3]  Defendants did so to get *New Yorkers* to watch the trailer and see their posters in *New*

---

[1] Capitalized terms and abbreviations not defined herein have the meanings used in Sesame's opening brief ("Br.").

[2] Of the two types of personal jurisdiction – "general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction," *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) –  Sesame asserts only that the Court has *specific* personal jurisdiction over Defendants.  Defendants' discussion of general jurisdiction and invocation of *Norex Petroleum Ltd. v. Blavatnik*, 22 N.Y.S.3d 138, 48 Misc.3d 1226(A), at *20 (N.Y. Sup. Ct. 2015), are irrelevant.

[3] Defendants are also utilizing highly interactive web sites and social media platforms to market the movie.  (*See* Halberstadter Decl. at ¶¶ 3-4 & Exs. 1-2 (showing viewer tweets and comments, and citing 42,000 "reactions", 51,474 "Shares", and 11,975 comments on Facebook; 555 comments, 2,600 retweets, and 7,200 likes on Twitter; and 1,739 comments and 12,000 likes on YouTube.)  These sites and platforms are available to New Yorkers, and easily distinguishable from the cases cited by Defendants.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 240, 253 (2d Cir. 2007) (defamatory statements posted on a passive website); *Bowman v. Winger*, No. 14 Civ. 3428 (AT), 2015 WL 1639255, at *4 (S.D.N.Y. Mar. 25, 2015) (defendant posted infringing photograph on a passive website).

*York theaters*, so that they will buy tickets to see the movie when it is released *in New York*.[4]
Defendants value these "impressions" – one view or display of an ad – in opposition to this application (*see* Springer Decl. ¶ 14), thereby acknowledging that distribution of the trailer constitutes transacting business here.  These acts – individually,[5] and in the aggregate – easily satisfy the first prong.[6]  *See, e.g., Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 302 (E.D.N.Y. 2009) (defendant who supplied a film treatment developed into an infringing movie that was to be distributed nationwide, including in New York, was subject to long-arm jurisdiction).[7]  *Second*, Sesame's claims plainly arise from Defendants' distribution of the trailer and other advertising in New York, and thus § 302(a)(1) is satisfied.[8]

---

[4] The case Defendants cite, *M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, No. 10 Civ. 4747 (CM), 2010 WL 4159476 (S.D.N.Y. Oct. 7, 2010), is easily distinguished.  In *M. Shanken*, the non-domiciliary defendant's contacts with New York were limited to (1) sending a handful of emails, which led to no business and from which plaintiff's trademark claim did not arise; (2) sending a handful of solicitations to New York inviting recipients to a wine tasting *in Washington, D.C.*; and (3) a passive website.  *See* 2010 WL 4159476, at *5-6.  Here, Defendants' infringing acts are far more substantial and targeted at New Yorkers.  And it does not matter that there have not yet been any ticket sales for *Happytime*.  *See, e.g., German Educ. Television Network, Ltd. v. Or. Pub. Broad. Co.*, 569 F. Supp. 1529, 1531-32 (S.D.N.Y. 1983) (out-of-state defendant intended and foresaw that its proposed programming marketing would be disseminated to broadcasting outlets in New York – "even without actual resulting sales").

[5] Even a *single* instance of transacting business in New York would suffice.  *See, e.g., Eades*, 799 F.3d at 169.

[6] Defendants cite no authority suggesting that their distribution of the trailer in other states is relevant to whether specific personal jurisdiction exists in New York.  (*See* Opp'n at 12-13.)  The argument is a non-sequitur.

[7] Defendants incorrectly describe *Blakeman*.  They state that the *Blakeman* plaintiff "alleged that the 'creation, production, and distribution' of allegedly infringing copyright material occurred in New York," (Opp'n at 14), but they ignore the second half of that sentence: "plaintiff has alleged . . . that defendants['] . . . unlawful appropriation . . . directly led to the creation, production, *and distribution* of [the infringing movie], **the latter of which** [*i.e.*, **distribution**] unquestionably is alleged to have occurred, *among other places*, in New York State.  613 F. Supp. 2d at 302 (emphasis added).  *Blakeman* is directly on point.

[8] Alternatively, N.Y. C.P.L.R. § 302(a)(2) provides for jurisdiction over a non-domiciliary that "commits a tortious act within the state."  Here, Defendants sent advertising materials to 270 theatres in New York for the express purpose of displaying them, and injury is sustained to Sesame's goodwill each time New Yorkers view that advertising and form impressions about its association with the movie.  Thus, Defendants committed a tortious act within New York.  *See, e.g., Cartier, a Div. of Richemont N. Am., Inc. v. Oakley, Inc.*, No. 06 Civ. 5841 (LAP), 2006 WL 3635321, at *2 (S.D.N.Y. Dec. 11, 2006) ("'In trademark infringement and unfair competition cases a claim is said to arise 'not where the deceptive labels are affixed to goods or where the goods are wrapped in the misleading packages, but … where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.'")  The facts here also meet the requirements of N.Y. C.P.L.R. § 302(a)(3), because, *inter alia*, the situs of the injury is in New York, where Sesame is located.  *See, e.g., Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *8 (S.D.N.Y. Apr. 30, 2018) ("The paradigm harm in a trademark case—public confusion as to source[]—is abstract, intangible, and often irreparable.  Therefore, infringement of [plaintiff's] trademarks most likely causes [plaintiff] injury in China, [plaintiff's] place of business,

2

B.     **Personal Jurisdiction Over Defendants Comports with Constitutional Due Process**

The Court must next analyze whether personal jurisdiction comports with constitutional due process concerns, which require: "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *Eades*, 799 F.3d at 168-69 (internal quotation marks omitted); *see also Walden*, 134 S. Ct. at 1121.  These requirements are also easily met.

1.     **Defendants Have the Requisite Minimum Contacts with New York**

The necessary minimum contacts exist "where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" *Eades*, 799 F.3d at 169 (quoting *Licci*, 732 F.3d at 170).  Defendants' wide distribution of the trailer in New York, and the business it conducts with movie theaters and others in connection with that distribution, *see supra* Part I.A, easily satisfies this test.  But there is much more.  Defendants distributed *I Feel Pretty*, currently playing at movie theaters in New York, (*see* Ranzenhofer Decl. ¶¶ 2-3);[9] it recently held the nationwide premieres of *The Circle*, *The Space Between Us*, and *Bad Moms* here, with the cast of the latter ringing the NASDAQ closing bell with Defendants' executives (*see id.* ¶¶ 4-11 & Exs. 1-2); tickets for Defendants' upcoming release for *Adrift* are available for presale in New York, and movie posters are up here (*see id.* ¶¶ 12-14); and Defendants host other business events here, including meetings with respect to their upcoming IPO (*see id.*, Ex. 3).  Clearly, Defendants' contacts with New York – related and unrelated to *Happytime* – satisfy any due process concerns.  *See, e.g.*, *Blakeman*, 613 F. Supp. 2d

---

in the form of reputational harm and loss of business and goodwill.") (internal quotation marks and citations omitted).  Defendants' cases are inapposite.  *See Marie v. Altshuler*, 30 A.D.3d 271, 272 (1st Dep't 2006) (rescission action in which the parties executed agreements in California); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27, 29 (2d Cir. 1997) (defendant's infringement consisted only of creating a web site in Missouri).

[9] Citations to the "Ranzenhofer Decl." refer to the Declaration of David Ranzenhofer in Support of Application for a Temporary Restraining Order and Preliminary Injunction, submitted herewith.

3

at 302; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (defendant circulated magazines to deliberately exploit a market in the forum State); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985) (defendants entered a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State).

### 2. Defendants Cannot Show That Jurisdiction Would Be Unreasonable

Lastly, if minimum contacts exist, the defendant must "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable'" to avoid jurisdiction. *Licci*, 732 F.3d at 173 (quoting *Burger King*, 471 U.S. at 477).[10] Defendants have presented no argument – let alone a "compelling case" – regarding any such considerations.

## II.
## SESAME IS LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIMS[11]

### A. *Happytime*'s Tagline Is Not a Disclaimer

Defendants permeate their brief with the assertion that the tagline is a disclaimer. The Second Circuit has cited academic literature questioning "the effectiveness of disclaimers in preventing consumer confusion." *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1315 (2d Cir. 1987). To be effective, disclaimers must be "prominent," *see Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999), "mak[e] clear the source of a product," and "be effective in substantially reducing consumer confusion," *see Home Box Office*, 832 F.2d at 1315. Disclaimers "which employ brief negator words such as 'no' or 'not' are generally ineffective." *Id.* at 1316. *See also, e.g.*, *ProFitness Physical Therapy Ctr. v. Pro-*

---

[10] These considerations include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164-65 (2d Cir. 2010).

[11] In the alternative, Sesame has shown sufficiently serious questions going to the merits, and as shown below, that the balance of hardships tips decidedly in Sesame's favor, *see infra* Part III.

*Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 66, 70-71 (2d Cir. 2002) (discussing disclaimer stating that parties "'are not affiliated in any way'"); *Harley Davidson*, 164 F.3d at 813 ("use of the prefix 'UN' before 'AUTHORIZED DEALER'" not an effective disclaimer).  Defendants have "a heavy burden . . . to come forward with evidence" to show a disclaimer is effective.  *Home Box Office*, 832 F.2d at 1316.

Here, Defendants argue that the very advertising tagline which sows confusion is a disclaimer that simultaneously dispels that confusion.  Defendants cite no authority supporting that twist of logic.  The Second Circuit's analysis assumes that a disclaimer is separate from the infringing language to counteract the confusion caused by that language.  *See, e.g.*, *Home Box Office*, 832 F.2d at 1314.  No authority suggests that a "disclaimer" that is itself a source of confusion is an effective disclaimer.

Defendants' argument that the confusing tagline is itself a disclaimer also defies logic.  First, because *Happytime*'s trailer does not contain any characters, sets, songs, or other elements from *Sesame Street*, there is nothing for the tagline to disclaim – apart from itself.  Second, Defendants market-tested their trailer with the tagline and used it because of the "overwhelmingly positive reaction." (Moore Decl. ¶¶ 4-7.)  If Defendants intended the tagline as a disclaimer rather than as an advertising slogan, audience reaction would have been irrelevant.  Here, however, Defendants acknowledge that "if STX were required to remove the 'NO SESAME' portion of the Film's tagline, [it would have to] ensure that any changes we make leave us ***with an equally effective piece of advertising***." (*Id*. ¶ 15 (emphasis added).)  Third, Defendants did not place the tagline anywhere near Defendants' own logos to dispel any confusion as to source.  Rather, the tagline appears well into the middle of the trailer, about 26 seconds after Defendants' logos appeared.  (*See* Br. at 1 n.2.)  Fourth, Defendants prominently

5

displayed their tagline on posts which have *no other content to disclaim*; the posts show only the lead actress and the name of the movie.  (Halberstadter Decl. Ex. 2 at 2, 5.)  In sum, Defendants have offered no evidence, authority or logic to meet their "heavy burden" to show the tagline is an effective disclaimer.

**B.     Defendants' Argument that They Are Not Using the Tagline as a Mark Is Meritless**

Defendants contend that the Court should not consider the *Polaroid* factors until it has first considered whether they are using the tagline as a mark.  (Opp'n at 16-17.)  The Second Circuit has squarely rejected that contention.  *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) ("We [] decline to adopt the rule that Lanham Act plaintiffs must show that the defendant was using the allegedly infringing content 'as a mark' . . . .")

In any event, Defendants are using their tagline as a mark because they are "using the 'term as a symbol to attract public attention.'" [12]  *Id.* at 306.  "[R]epeated and wide-ranging" use is use as a mark.  *Id.* at 310.  Defendants repeat their tagline (1) in their trailer (Br. at 1 n.2); (2) in their poster (Ranzenhofer Decl. Ex. 4); and (3) across social media (Orsini Decl. ¶¶ 4-5).  Even where Defendants' marks are present, "[i]t is well established law that both a slogan and a single brand name can serve as co-existent marks."  717 F.3d at 310.  Indeed, Defendants display the tagline *more prominently* than their marks.  (Ranzenhofer Decl. Ex. 4 (tagline at top of poster and defendants' marks smaller at bottom); Br. at 1 n.2 (tagline in trailer in large, colored font); Orsini Decl. ¶¶ 4-5 (social media pages showing tagline but *not* defendants' marks).)

**C.     Defendants' Conclusory Fair Use Defense Lacks Merit**

   **1.     Classic Fair Use.**

To prevail on a classic fair use defense, "the defendant must prove three elements: that

---

[12] Advertising taglines have long been recognized as trademarks.  *See e.g.*, *Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 831 (C.C.P.A. 1970).

6

the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly-Brown*, 717 F.3d at 308. Here, Defendants are using their tagline as a mark. *See supra* Part II.B. Similarly, Sesame has provided ample evidence of bad faith. *See infra* Part II.D.4.

Furthermore, Defendants are not using Sesame's mark "in a descriptive sense;" *i.e.*, to describe their own goods. *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000). "[T]he scope of the fair use should be related to the degree to which the descriptive meaning is relevant to the goods with which it is associated in the alleged infringement, and whether there are other terms available to describe the pertinent characteristic." *Id.* at 65. "How the senior mark holder used the mark in conjunction with its own product *is not relevant to this inquiry*." *Id.* (emphasis added). "Courts more readily find a phrase descriptive when it is in common usage." *Kelly-Brown*, 717 F.3d at 311.

SESAME STREET is not descriptive; it refers only to *Sesame Street*, as Defendants admit (Opp'n at 20). But how Sesame uses its mark is irrelevant. And "NO SESAME" does not describe *Happytime* other than to reference *Sesame Street*. *See Kelly-Brown*, 717 F.3d at 312 ("Own Your Power" did not describe magazine contents); *EMI*, 228 F.3d at 65 ("Swing Swing Swing" not descriptive). Myriad other terms could describe *Happytime* such as puppets or furry.

   2.   **Nominative Fair Use**

Nominative fair use occurs when a defendant uses "a plaintiff's trademark to identify the plaintiff's goods," *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 413 (S.D.N.Y. 2006), and is permissible only if "there is no likelihood of confusion." *Id.* The nominative fair use factors do *not* replace the *Polaroid* factors. *See Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 168 (2d Cir. 2016). The nominative fair use factors are: (1) the product or service cannot be identified without the mark; (2) the mark be used only to the extent necessary to identify the product; and (3) the use of the

mark must not suggest sponsorship or endorsement.  *Merck*, 425 F. Supp. 2d at 413.  "A common example of nominative fair use arises in comparative advertising."  *Id.*

Defendants are not using Sesame's mark to identify Sesame's goods because *Sesame Street* has nothing to do with *Happytime*.  *See Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 457 (S.D.N.Y. 2017) (rejecting argument that use of plaintiff's mark was "to inform consumers that [defendant] was not the manufacturer of the original fragrance").  Further, Sesame has shown a likelihood of confusion.  *See id.* (rejecting nominative fair use where "the *Polaroid* factors are firmly on" plaintiff's side).  Moreover, all three nominative fair use factors favor Sesame:  (1) *Sesame Street* is readily identifiable without use of Sesame's mark; (2) the mark is displayed prominently as Defendants' tagline, *see supra* Part II.A; *Int'l Info. Sys.*, 823 F.3d at 168 (courts consider "whether the alleged infringer 'step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often'"), and is altered such that it is not simply identifying *Sesame Street*; and (3) Defendants suggest affiliation through their prominent display of Sesame's mark, *see supra* Part II.A, *infra* Part II.D; *Int'l Info. Sys.*, 823 F.3d at 169 (courts "must consider confusion regarding affiliation, sponsorship, or endorsement").  Nor is Defendants' trailer or tagline comparative advertising, which requires the plaintiff's mark be unaltered and used to "impart[] factual information about the relative merits of competing products."  *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 44 (2d Cir. 1994).

**D.**  **Sesame Is Likely to Show a Likelihood of Confusion**[13]

**1.**  **The Similarity of the Marks Factor Favors Sesame**

Defendants contend that they are not using Sesame's mark because "NO SESAME. ALL STREET." is not identical to SESAME STREET.  (Opp'n at 16-17.)  The Second Circuit has

---

[13] Defendants concede that the strength of the mark factor favors Sesame.  (Opp'n at 20.)  For the same reasons that Sesame shows likelihood of confusion, it shows dilution by blurring.  (Br. at 26.)

8

rejected Defendants' argument that identical marks are required.  (*See* Br. at 18.)

"'It is the general rule that one may not appropriate the entire mark of another and avoid a likelihood of confusion by the addition thereto of descriptive or otherwise subordinate matter.'" *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 317 (S.D.N.Y. 2010).  "[G]eneric terms are given less weight in analyzing the likelihood of confusion." *Id.* at 335.  Here, the addition of the generic terms "NO" and "ALL" to Defendants' tagline does not dispel confusion.  *See supra* Part II.A.  Rather, consumers will focus on the common, operative words and conclude Sesame is associated with *Happytime*, such as through an adult-oriented brand.

Defendants excerpt "screen grabs" of text from the trailer and copy those words into a "consecutive[] . . . description."  (Opp'n at 8-9 (citing Halberstadter Decl. ¶¶ 8).)  But courts analyze the similarity of the marks "considering the context in which the marks are displayed" (Br. at 18), considering whether the products are viewed simultaneously or serially.  *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 528 (S.D.N.Y. 2011).  *Happytime*'s trailer would not be viewed as consecutive text, nor would *Sesame Street* and *Happytime* be viewed simultaneously.  Here, where the only difference between the marks is the addition of two generic words to the tagline, it is likely that consumers who view the marks in the ordinary course will assume a connection between *Sesame Street* and *Happytime*.

### 2. The Proximity of the Products Factor Favors Sesame

Without citing any authority, Defendants suggest Sesame must show confusion "specifically because of the Tagline."  (Opp'n at 21.)  Defendants have it backwards.  The *closer* two products are, the *more likely* consumers are to be confused when the products use similar marks.  *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003).  Thus, similarities between *Sesame Street* and *Happytime* favor a finding of likelihood of confusion.

Defendants also argue that consumers will not confuse *Sesame Street* and *Happytime*

9

because their content differs. (Opp'n at 21.) But "'[l]ikelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification.'" *N.Y.C. Triathlon*, 704 F. Supp. 2d at 329. In considering nonidentical products, "the relevant question is whether they are so 'related'" that consumers will infer connection or sponsorship. *Id.* at 336. Sesame does not argue that consumers will think *Happytime* is *Sesame Street*; rather, Sesame is concerned consumers will think (and Sesame has shown that consumers have thought) Sesame is associated with *Happytime* and allowed its mark to be used.

### 3. Sesame Has Shown Significant Evidence of Actual Confusion

Defendants contend the ten instances of confusion identified by Sesame are insufficient, but evidence of actual confusion is not even necessary. *Lambda Elecs. Corp. v. Lambda Tech., Inc.*, 515 F. Supp. 915, 926 (S.D.N.Y. 1981). "It has often been recognized that a plaintiff usually faces a formidable task in obtaining proof of actual confusion." *Id.* at 926-27. That Sesame has satisfied this "formidable task" – when Defendants' trailer began playing less than a week before Sesame filed its moving papers – is significant.[14] *See N.Y.C. Triathlon*, 704 F. Supp. 2d at 338-39 (factor did not favor defendant where one instance of actual confusion occurred in less than two months). Since filing this case five days ago, Sesame has found even more instances of actual confusion. (Ranzenhofer Decl. ¶¶ 16-27.)[15]

### 4. The Bad Faith Factor Favors Sesame

Defendants misleadingly argue that Sesame contends that "mere reference" to a mark is bad faith. (Opp'n at 23.) Rather, bad faith can be inferred from Defendants' use of the mark

---

[14] Defendants also argue that these instances of confusion "must be considered in the context of the total number of Internet users who have viewed the Trailer." (Opp'n at 22-23.) But Defendants fail to indicate the time frame over which consumers watched the trailer. Many of those viewers would have viewed the trailer after Sesame filed this case, and it received significant media coverage.

[15] Defendants cite no authority – and none exists – to support their suggestion that it is Sesame's obligation to disaggregate confusion flowing from their tagline from other elements of the trailer they chose to assemble.

10

3356132.1

*with knowledge that it was Sesame's mark*. (Br. at 21-22.) Defendants admit that their marketing materials deliberately reference *Sesame Street*. (A. Fogelson Decl., ¶ 11.)

### 5. The Quality of the Products Favor Favors Sesame

Defendants argue that their movies "are of high quality." (Opp'n at 24), but that is immaterial. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259-60 (2d Cir. 1987). Regardless of the "production value[]," Sesame does not want to be associated with explicit, raunchy content. (Br. at 22-23.)

### 6. The Consumer Sophistication Factor Favors Sesame

Defendants' response to the fact that *Sesame Street* and *Happytime* both target general consumers is that adults can tell the difference between them. (Opp'n at 24.) Again, the question is not whether *Sesame Street* and *Happytime* are the same, but rather, whether Sesame is affiliated with *Happytime*. Consumers assume such an affiliation.

### III.
### SESAME HAS SHOWN IRREPARABLE HARM AND THAT THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN ITS FAVOR

Defendants argue Sesame must offer "proof of irreparable injury." (Opp'n at 26.) "'Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . .'" *U.S. Polo*, 800 F. Supp. 2d at 540. (*See also* Br. at 27-28.) Defendants' attempt to impose a higher burden is unavailing.[16]

Defendants further contend that the balance of hardships does not tip decidedly in Sesame's favor because of purported costs if they cease using the infringing tagline. Defendants "'deliberately sailed in harm's way' and 'the hardship of which [they] complain[] is significantly of [their] own making.'" *Columbus Rose Ltd. v. New Millennium Press*, No. 02 Civ. 2634

---

[16] Defendants similarly ignore the rule that tarnishment occurs when a mark is placed in the context of sexual activity, obscenity, or illegal activity (Br. at 25), again inventing an "evidentiary" requirement. (Opp'n at 25.)

11

(JGK), 2002 WL 1033560, at *10 (S.D.N.Y. May 20, 2002) (discussing "pre-orders and marketing efforts" relating to infringing book). Defendants' purported "hardship" is a thinly-veiled effort to inhibit Sesame, a non-profit, from litigating this case. Defendants already have other marketing materials, including a Spanish trailer with different text.[17] Defendants cite the costs of creating an entirely new trailer (Moore Decl. ¶¶ 12-17), which is not tethered to the relief Sesame seeks. Defendants offer no reason why removing superimposed text would require revising their digital marketing strategy (Moore Decl. ¶ 19).[18] Defendants' assertion that they would need to purchase $715,000 of trailer buys (Springer Decl. ¶ 14) is not a cost of removing the tagline, and attempts to bootstrap the increased number of "impressions" generated by the publicity associated with this lawsuit into "costs" of removal. Nor do Defendants offer any basis for the $105,000 cost to throw out infringing posters. (Springer Decl. ¶ 9.) The actual cost of replacing the trailer is a small fraction of what Defendants claim. (*See* James Decl. ¶¶ 5-10.)

## IV.
## ANY BOND REQUIRED SHOULD BE DE MINIMIS

A bond must have a "rational basis" and must not be "speculative." *Am. ORT, Inc. v. ORT Israel*, No. 07 Civ. 2332 (RJS), 2009 WL 233950, at *4-5 (S.D.N.Y. Jan. 22, 2009) (rejecting conclusory assertions in support of bond). Here, Defendants offer the conclusory assertions of their officers that they will "incur *huge* costs." (Springer Decl. ¶¶ 9-14; Moore Decl. ¶¶ 17-19; *see also* James Decl. ¶¶ 5-10.) Those inflated numbers should be rejected.

## CONCLUSION

For the reasons set forth herein and in Sesame's opening brief, Sesame respectfully requests that the Court grant this motion.

---

[17] *See* https://www.youtube.com/watch?v=J9OB7Z8mS9U.

[18] Moreover, Defendants frequently create multiple trailers for their movies. (*See* Ranzenhofer Decl. ¶¶ 29-31.)

Dated: New York, New York
May 29, 2018

Respectfully Submitted,

FRIEDMAN KAPLAN SEILER &
 ADELMAN LLP

_/s/ Mary E. Mulligan_
Andrew W. Goldwater (agoldwater@fklaw.com)
Mary E. Mulligan (mmulligan@fklaw.com)
John N. Orsini (jorsini@fklaw.com)
David J. Ranzenhofer (dranzenhofer@fklaw.com)
7 Times Square
New York, New York  10036-6516
(212) 833-1100

*Attorneys for Plaintiff Sesame Workshop*